UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE ) | |
| ) | |
| HANS LIEBL and KIMBERLY LIEBL, ) | |
| Debtors. ) | Bankruptcy No. 08 B 14638 |
| MARTIN WALLNER, ) | |
| Plaintiff, ) | |
| v. ) | Adversary No. 08 A 00689 |
| HANS LIEBL and KIMBERLY LIEBL, ) | |
| Defendants. ) | |
| MARTIN WALLNER, Derivatively, on behalf of ) | |
| THE ORIGINAL BRAT HANS, LLC, ) | |
| Plaintiff, ) | |
| v. ) | |
| HANS LIEBL and KIMBERLY LIEBL, ) | |
| Defendants. ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING DEFAULT

This Adversary proceeding is related to the case filed by debtors Hans and Kimberly Liebl under Chapter 7 of the Bankruptcy Code. Creditor Martin Wallner filed the Adversary Complaint on his own behalf and also derivatively on behalf of The Original Brat Hans, LLC ("the LLC").

Hans Liebl ("Liebl") has worked in the food marketing industry for over twenty years, selling and/or distributing food products, Kimberly Liebl is asserted to be an artist, and Wallner is a chef with over twenty years of experience. (Second Am. Compl. [Docket No. 49] ¶¶ 6–8.) The creditor-plaintiffs seek to bar dischargeability of an asserted debt, and for a money judgment of $137,500 as to that debt. The Complaint is pleaded in eight counts. Wallner individually brings Count I against Liebl under 11 U.S.C. § 523(a)(2) on the asserted basis that Liebl fraudulently induced Wallner to invest in the LLC. Wallner also brings Count II on his own

behalf against both the Liebls under §§ 523(a)(2) and (6) on grounds that they conspired to defraud Wallner of his capital investment. Counts III and IV seek recovery from Liebl under § 523(a)(4), alleging that Liebl committed fraud while acting in a fiduciary capacity. Wallner brings Count III on his own behalf and Count IV derivatively on behalf of the LLC. Counts V and VI seek recovery under § 523(a)(4) on grounds that Liebl embezzled funds. Wallner brings Count V on his own behalf and Count VI derivatively on behalf of the LLC. Counts VII and VIII seek recovery under §§ 523(a)(4) and (6) on grounds that both the Liebls conspired to embezzle. Wallner brings Count VII directly and Count VIII on behalf of the LLC.

Summons was properly served on the defendant-debtors, who failed to appear or plead. The plaintiff-creditors thereafter moved on notice for entry of a default order. The default order was entered, and therefore the Complaint's allegations were taken as confessed against the defendants. By way of supplementing allegations of the Complaint as prove up on Motion for Default Judgment, the plaintiffs also filed an affidavit by Wallner [Docket No. 19 ex. 10] and a copy of the deposition of Robert Salgena taken in this proceeding and appended to the plaintiffs' Supplemental Memorandum [Docket No. 65 ex.]. Based on the foregoing, the following Findings of Fact and Conclusions of Law are made and are to be entered.

## FINDINGS OF FACT

In February 2007, Liebl approached Wallner with a written proposal to invest in Liebl's new food company. (Second Am. Compl. ¶ 10.) As part of the proposal, Liebl represented that he had already developed a line of sausages, that the product line was approved for sale to Whole Foods, and that he had contracted with a Whole Foods–approved plant to produce the sausages. (Id. at ¶¶ 10–11.) Wallner also represented that his "conservative" expected sales figures for 2007 exceeded $600,000, increasing to at least $25,000,000 by 2017. (Id. at ¶ 11, ex. A.) He also

"verbally misrepresented" that his company had $10,000 a week in existing sales. (*Id.* at ¶¶ 11–12, ex. A.) Liebl did not then disclose that he and his wife had financial liabilities, lawsuits, and judgments against themselves personally and against other limited liability companies with which they were affiliated. (*Id.* at ¶ 48; Wallner Aff. [Docket No. 19 ex. 10], at ¶¶ 6–7 .)

After negotiations, Liebl set up the LLC and Wallner received a 40% interest in it in return for his investment of $100,000. (Second Am. Compl. ¶¶ 15–17.) Subsequently, Wallner obtained another 10% interest in exchange for more money. (*Id.* at ¶¶ 27–28.) Thus, for a total investment of $137,500, Wallner obtained a 50% ownership interest. Wallner deposited these funds in a business checking account opened by Wallner and Liebl. (*Id.* at ¶¶ 24, 31.) Both had authorization to write checks, use a business debit card, and make withdrawals from the account. (Wallner Aff. ¶ 19.)

Although Wallner was a manager and a member of the LLC, Liebl and Wallner agreed that Liebl would "largely control" the business management. (Second Am. Compl. ¶¶ 18–20.) Liebl's exact, formal corporate role in the LLC is unclear. He was the sole member and manager at the time of the LLC's organization. (*Id.* at ¶ 17.) Under the LLC's Operating Agreement,[1] however, the initial members were Wallner and Kimberly Liebl, while Liebl is only a manager and not a member. (*Id.* at ex. E 6, 37.) The Operating Agreement provided that all its powers would be exercised by or under authority of the Management Committee, consisting of Hans Liebl, Kimberly Liebl, Martin Wallner, and Susan Wallner; that the Management Committee had authority to sell or otherwise dispose of all, or substantially all, of the LLC's assets; and that

---

[1] The Operating Agreement is found at Docket No. 49, Ex. E; it is unsigned by any of the parties, but in the default procedure it has been shown to have been drafted and agreed to by the parties to this proceeding.

unless authorized by the Operating Agreement or the Management Committee, no agent of the LLC had authority to bind it. (*Id.* at ¶ 18, ex. E.)

Beginning in March 2007 and without authorization, Liebl used funds held in the LLC's checking account in order to pay his personal expenses and creditors, creditors of his three other defunct limited liability companies, and creditors of Kimberly Liebl. (*Id.* at ¶¶ 33–35; Wallner Aff. ¶¶ 14–15.) These transactions included, *inter alia*, checks made payable to Liebl or payable to "cash" totaling $12,750.00; ATM withdrawals totaling $5,376.90, including withdrawals made while on vacation to Puerto Vallarta, Mexico and Door County, Wisconsin; and $14,850 for artwork purchased from Kimberly Liebl with LLC funds (Second Am. Compl. ¶¶ 33, 35, 36.) There are other allegations of unauthorized appropriations by Liebl, but the exact dollar amounts of those are not documented. (*See id.*)

In March 2007, Liebl designed a logo and retail label on behalf of the LLC for "The Original Brat Hans" brand of sausage. (*Id.* at ¶ 22.) The label featured caricatures of both Liebl and Wallner, and was approved by the Federal Drug Administration in July 2007. (*Id.* at ¶¶ 22, 30, ex. B.) By November 2007, the LLC was selling approximately 10,000 pounds of sausage per month bearing the "The Original Brat Hans" retail label. (Wallner Aff. at ¶ 13.)

In October 2007, the LLC received a cease and desist letter from Coleman Natural Foods ("Coleman"), informing the LLC that it must cease its operations due to an alleged trademark infringement. (Second Am. Compl. ¶ 37.) Following receipt of the letter, Liebl offered all, or substantially all, of the "assets, intellectual property, and trade secrets" of the LLC to Coleman. (*Id.* at ¶ 38.) In December 2007, Liebl also informed Wallner that the LLC had ceased operations. (Wallner Aff. ¶ 17.) Coleman's response to Liebls' offer is unknown, but in February 2008, Coleman hired Liebl and began marketing a line of sausage that was also called "The Original

4

Brat Hans" under a label strikingly similar to the one previously used by the LLC. (*Id.* at ¶¶ 40–41.) One notable difference between the LLC's and Coleman's label is the absence of Wallner's signature and caricature. (Salegna Dep. [Docket No. 65 ex.] 97:9–104:22; Second Am. Compl. ex. C.) Coleman's line of The Original Brat Hans sausage is still being sold. (Second Am. Compl.¶ 42; Wallner Aff. ¶ 18.) Liebl received a salary of $150,000, and Coleman agreed to assume $100,000 of debts incurred by way of Liebl's association with the LLC as a "signing bonus." (Salenga Dep. 38:13–38:21, 46:7–46:25, 139:22–139:25, 143:1–143:5.)

On June 6, 2008, Liebl and Kimberly Liebl jointly filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On August 27, 2008 Wallner filed this Adversary Complaint, seeking money damages and to bar the discharge of the Liebls' debt to him on grounds arising from various provisions of 11 U.S.C. § 523(a). Wallner properly served a summons on the Liebls [Docket Nos. 2, 5]. Following several efforts by plaintiffs in this proceeding that are not pertinent here,[2] the present Motion for Default Judgment was presented.

## CONCLUSIONS OF LAW

### I. JURISDICTION

Subject matter jurisdiction lies under 28 U.S.C. § 1334. It is before the Court pursuant to

---

[2] The procedures preceding the instant Motion for Default Judgment can be summarized as follows: On September 25, 2008 the Trustee in the Liebls' Chapter 7 case filed a No Asset Report, and the Bankruptcy case was closed the next day. On April 21, 2009, in the absence of the undersigned, Bankruptcy Judge Goldgar granted Wallner's motion for a default judgment in favor of Wallner and against Hans Liebl in the amount of $137,500 plus costs, which was held to be non-dischargeable under §§ 523(a)(2) and (a)(4). [Docket No. 23.] On May 6, 2009, Wallner moved to modify that default judgment, requesting that the modified judgment state that judgment was entered on Counts I and II, but that the court should reserve judgment as to Counts III through X. [Docket No. 24]. Wallner later moved to vacate the Default Judgment of April 21. [Docket No. 28.] Two days later, Wallner's motion to vacate the Default Judgment was granted by Judge Schmetterer [Docket No. 32.], and the instant default proceedings then went forward.

28 U.S.C. § 157 and is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. §§ 1408 and 1409. This Adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## II. DEFAULT PROCEDURES

"Upon default, all well-pled facts in the complaint are deemed admitted." *In re Smith*, 280 B.R. 436, 441 (Bankr. N.D. Ill. 2002) (*citing Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). But entry of a default judgment does not automatically result after default. *Id.* (*citing Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)). The grant of a motion for entry of a default judgment lies within the sound discretion of the trial court. *Merrill Lynch Mortgage Corp. v. Narayan*, 908 F.2d 246, 252 (7th Cir. 1990). "In the bankruptcy context, where a debtor has a presumptive right to a discharge, default judgment motions should not be granted unless the movant shows that its debt is nondischargeable as a matter of law." *In re Zecevic*, 344 B.R. 572, 576 (Bankr. N.D. Ill. 2006). Thus, a plaintiff must show at least *prima facie* facts meeting the legal requirements to except a debt from discharge. *See id.*

## III. EXCEPTION FROM DISCHARGE

The main purpose of a discharge in bankruptcy is to give a debtor a fresh start. *See Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir. 2002). However, an individual debtor is not discharged from any debt for, *inter alia*, fraud, fraud incurred while acting in a fiduciary capacity, or embezzlement. 11 U.S.C. § 523(a)(2)(A) and (a)(4). The party seeking to establish an exception to discharge bears the burden of proof. *In re Harasymiw*, 895 F.2d 1170, 1172 (7th Cir. 1990). A discharge exception must be established by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

In addition to finding a finding a debt nondischargeable, a bankruptcy judge has the

authority to determine the amount of that debt, and enter a dollar judgment on that finding. *In re Hallahan*, 936 F.2d 1496, 1508 (7th Cir. 1991).

Wallner brings eight separate counts, some direct and some derivative, each seeking an exception to discharge under 11 U.S.C. § 523(a)(2), (4), and (6). For reasons discussed below, Wallner is entitled to judgment on Counts VI and VIII, but not on the other Counts.

### A. Wallner Is Entitled to Judgment on Behalf of the LLC for Embezzlement under 11 U.S.C. § 523(a)(4) (Count VI)

A plaintiff may maintain a derivative action on behalf of a limited liability company "unless members or managers with authority to do so have refused to bring the action or unless an effort to cause those members or managers to bring the action is not likely to succeed." 805 Ill. Comp. Stat. 180/40-1.[3] In this case, the Management Committee of the LLC was made up of Hans and Kimberly Liebl and Martin and Susan Wallner. An effort to cause the Management Committee of the LLC to bring an action against Liebl would certainly fail because the Wallners would not be able to get a majority vote. Therefore, Wallner, as a member of the LLC, may assert derivative claims on behalf if the LLC against Liebl.

A debt for embezzlement is excepted from discharge in bankruptcy. 11 U.S.C. § 523(a)(4). Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538–39 (7th Cir. 1989), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 291 (1991). In order to prove embezzlement, a creditor must show that the debtor (1)

---

[3] In federal court, a plaintiff must also meet certain pleading requirements in order to bring a derivative action. *See* Fed. R. Civ. P. 23.1 (made applicable in this proceeding by Fed. R. Bankr. P. 7023.1). However, the Rule 23.1 requirements are procedural pleading requirements, not substantive requirements. Moore's Federal Practice - Civil § 21.1.04. The circumstances under which a plaintiff has the right to bring a derivative claim is determined by other law. *Id.*

appropriated property for her own benefit; and (2) that she did so with fraudulent intent or deceit. *Id.* Thus, it is not sufficient that the debtor act without authority, but she must also have fraudulent intent.

Wallner brings Count VI as a derivative claim on behalf of the LLC, claiming that Liebl embezzled funds, intellectual property, and trade secrets from the LLC. Here, the facts clearly demonstrate that Liebl's appropriation of the LLC's funds and property was not authorized. Did he have fraudulent intent? The answer must be yes. On this record, Liebl was aware of the Operating Agreement requirement that all actions must be directed by the Management Committee. The Committee did not authorize his use of the LLC's funds for his own private use, nor did it authorize his transfer of the LLC's property to Coleman. His disregard of the LLC's rules and use of his day-to-day authority and opportunity to profit himself and his wife at the LLC's expense indicates the fraudulent intent. Even stronger evidence of that intent comes from Liebl informing Wallner that the LLC was shut down, but then taking employment with another company selling a similar product and receiving a substantial salary with substantial signing bonus.

Since Hans Liebl appropriated the LLC's property and did so with fraudulent intent, he embezzled from the LLC, and judgment will be entered accordingly as for all funds and property, tangible and intangible taken for his personal use and benefit. This includes checks made payable to Liebl or payable to "cash," totaling $12,750.00; ATM withdrawals totaling $5,376.90, including withdrawals made while on vacation to Puerto Vallarta, Mexico and Door County, Wisconsin; and $14,850.00 for artwork purchased from Kimberly Liebl with LLC funds. The total of $32,976.90 will be declared nondischargeable under 11 U.S.C. § 523(a)(4) by separate order.

Additionally, there were misappropriations of intellectual property and trade secrets. *See generally In re Sullivan*, 305 B.R. 809, 826–27 (Bankr. W.D. Mich. 2004) (finding that under federal law, intangible property can be embezzled). However, Wallner did not offer any proof of the value of those properties. He generally alleged that additional funds were embezzled, but he did not establish the details as to amounts and circumstances. Wallner did claim that he and the LLC are owed a total of $137,500, but that was the amount he invested in the LLC, not an amount that he proved that Liebl took without authorization. Since Wallner did not establish the value of the intellectual property and trade secrets Liebl took for the benefit of himself and his wife, no dollar judgment can be entered thereon. However, it can be declared that if Wallner and the LLC can trace the value and location of those properties in non-bankruptcy litigation, the recovery of such value and debt therefrom will be nondischargeable.

## B. Wallner Is Entitled to Judgment on Behalf of the LLC for Civil Conspiracy to Embezzle under 11 U.S.C. § 523(a)(4) (Count VIII)

A conspiracy exists when there is: (a) an agreement between two or more persons, (b) for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, (c) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *In re Rest. Dev. Group, Inc.*, 397 B.R. 891, 896–97 (Bankr. N.D. Ill. 2008). Co-conspirators are jointly and severally liable for each other's actions. *PaineWebber, Inc. v. Ras*, 767 F. Supp. 930, 933–34 (N.D. Ill. 1991).

In Count VIII, Wallner alleges that Kimberly and Hans conspired and entered into a scheme to embezzle from the LLC. Following from the above ruling on Count VI, Kimberly Liebl is jointly and severally liable for embezzlement as Liebl's co-conspirator. Evidence of the conspiracy agreement comes from the facts established, that the two were married, that both had

official roles within the LLC that they both profited from, and that they used appropriated funds for both their benefits. Wallner also established the other two elements, since the purpose of the Liebls' agreement was to enrich themselves at the LLC's expense and Wallner alleges numerous overt acts. Indeed, each unauthorized transfer of funds or property was such an act. Since Liebl embezzled from the LLC and Kimberly Liebl conspired with him, they are both jointly and severally liable for the embezzlement. The scope of the judgment on this Count will be subject to the same restrictions as in Count VI. That is, judgment for $32,976.90 will be entered and declared nondischargeable and any recovery later of the value that may be established for the intangible property of the LLC will also be declared nondischargeable.

### C. Wallner Is Not Entitled to Judgment for Fraud under 11 U.S.C. § 523(a)(2)(A) (Count I)

A debt for money is not dischargeable to the extent the debtor obtained that money by false pretenses, a false representation, or actual fraud. 11 U.S.C.§ 523(a)(2)(A). Fraud is a generic term that encompasses "'all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated.'" *McCellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000) (*quoting Stapelton v. Holt*, 250 P.2d 451, 453–54 (Okla. 1952)). In order to except a debt from discharge under the actual fraud prong, the creditor must show that (1) a fraud occurred, (2) the debtor intended to defraud, and (3) the fraud created the debt. *Id.* at 893–94. Under the false pretenses or false representation prong, the creditor must show that (1) the debtor obtained funds through representations that the debtor knew to be false (2) the debtor intended to deceive the creditor, and (3) the creditor justifiably relied on the statement to his detriment. *See In re Jairath*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).

In Count I, Wallner claims under § 523(a)(2)(A) that Liebl fraudulently induced him to invest in the LLC. Accordingly, Wallner must show that Liebl engaged in some fraud or made

false representations in inducing Wallner to invest. Wallner failed to show any false representations made by Liebl, or any deceit, artifice, trick, or design that Liebl used to induce him to invest. In fact, Wallner has shown that the business operated for several months after his initial investment. The fact that Liebl actually operated the business and made sales is not logically consistent with Wallner's claim in this Count.

Wallner did allege that Liebl made several misrepresentations. (*See* Wallner Aff. [Docket No. 9 ex. 10].) Even taken as true, these allegations do not contain sufficient facts to except the debt from discharge on this Count, nor were they supplemented by prove-ups after default. Wallner alleges that (1) Liebl misrepresented that the LLC had pending orders and sales and (2) the future sales potential of the LLC, (3) failed to mention his, his wife's, and his previous business's debts and liabilities, and (4) failed to mention his offer to sell the LLC to a third party.

As for the first allegation, Wallner has not shown Liebl's alleged claims of orders and sales to be false.

Regarding the second allegation, the projected sales figures, even if they were not reached, were nothing more than puffery. *See, e.g., Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1009 (7th Cir. 2004) (fraud occurs only when a person of ordinary prudence and comprehension would rely on specific misrepresentations.) The claimed sales figures come from a business proposal rife with spelling and typographical errors. (Second Am. Compl. ex. A.) The proposal anticipated sales in the first year of $600,000 to $1,000,000, increasing to "$25,000,000 to ??????????? [sic]" in ten years. (*Id.*) These projected sales figures appear as optimistic attempt at a sales pitch of sorts, which no one would reasonably rely on. Moreover, Wallner has failed to show that the business was not on track to complete such sales.

As for Liebl's failure to reveal his and his wife's debts, there was no reason for Liebl to

have mentioned his or his wife's outside debts. If Wallner was concerned about them, he could have asked or checked the Liebls' credit. Finally, Liebl's neglecting to mention his offer to sell the LLC does not show fraudulent inducement. Liebl's offer to sell the LLC came months after Wallner's investment, and therefore bears no relationship to any alleged fraud at the time the investment was made.

For all these reasons, Wallner has not shown Liebl fraudulently induced him to invest in the LLC.

### D. Wallner Is Not Entitled to Judgment for Civil Conspiracy to Commit Fraud under 11 U.S.C. § 523(a)(2)(A) (Count II)

In Count II, Wallner alleges that a civil conspiracy existed between Hans and Kimberly Liebl, which they entered into to defraud Wallner. A conspiracy exists when there is: (a) an agreement between two or more persons, (b) for the purpose of accomplishing, by some concerted action, either an unlawful purpose or a lawful purpose by unlawful means, (c) in furtherance of which one of the conspirators committed an overt tortious or unlawful act. *In re Rest. Dev. Group, Inc.*, 397 B.R. 891, 896–97 (Bankr. N.D. Ill. 2008). In this case, Wallner did not show that there was any such agreement with an unlawful purpose. As stated above, the LLC actually operated for several months, and there are no facts established to show that the Liebls intended to defraud Wallner at the inception of the enterprise. Therefore, there was no conspiracy to commit fraud as alleged in this Count.

### E. Wallner Is Not Entitled to Judgment for Fraud While Acting in a Fiduciary Capacity under 11 U.S.C. § 523(a)(4) (Count III)

A debt for fraud while acting in a fiduciary capacity is excepted from discharge. 11 U.S.C. § 523(a)(4). For purposes of this discharge exception, a fiduciary relationship arises only when (1) there is a trust relationship that existed prior to, and independent of, the debtor's alleged

wrong and (2) when there is "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *In re Marchiando*, 13 F.3d 1111, 1115–16 (7th Cir. 1994). In this Circuit, joint venturers or general partners who are in equal positions generally do not have a fiduciary duty towards each other for the purposes of § 523(a)(4). *See In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996). However, a "substantial inequality in power or knowledge" can give rise to such a relationship. *Id.*

Count III alleges that Liebl perpetrated a fraud while acting in a fiduciary capacity with respect to Wallner. Wallner alleges that Liebl, due to his "influence and superiority" over Wallner, owed a fiduciary duty towards him, and that he committed fraud while acting in his fiduciary capacity. As a result, Wallner claims that he is entitled to a nondischargeable money judgment under § 523(a)(4). He is not entitled to such a judgment, since there was neither a fiduciary relationship nor proof of fraud.

From the facts presented, Wallner and Liebl were in equal positions. They both owned 50% of the LLC (Second Am. Compl. ¶ 69), and Wallner's authority and official position within the LLC was at least equal to Liebl's. Both were managers, and Liebl may have not even been an official member of the LLC. Assuming that Kimberly Liebl would vote with Hans Liebl and Susan Wallner would vote with Martin Wallner, both possessed a 50% voting bloc within the Management Committee. The most Wallner has shown is that Liebl had twenty years of experience in the food marketing industry that the LLC utilized, and that he and Liebl agreed that Liebl would control the management of the LLC. Wallner did not provide any other information to indicate that Wallner had less say or control or that Liebl was in a "position of ascendancy." Therefore, Liebl did not have a fiduciary duty towards Wallner under § 523(a)(4).

Wallner also asserts that Liebl committed fraud by misappropriating funds for his and his

wife's personal use, and by transferring the LLC's property to Coleman. As discussed above, Wallner has not shown any fraud—there was no showing of any deceit, artifice, trick, or design. See *McCellan*, 217 F.3d at 893. He showed only that Liebl took what was not his. Since there was neither a fiduciary relationship nor proof of fraud, Wallner is not entitled to a recovery on this Count.

### F. Wallner Is Not Entitled to Derivative Judgment for Fraud While Acting in a Fiduciary Capacity under 11 U.S.C. § 523(a)(4) (Count IV)

Wallner brings Count IV as a derivative claim on the LLC's behalf. In this Count, Wallner alleges that Liebl had a fiduciary relationship towards the LLC, and that he committed fraud while in that relationship. As a result, Wallner claims that the LLC is entitled to a nondischargeable money judgment under § 523(a)(4). The allegations of fraud are the same as in Count III. Wallner has not shown any facts regarding in support of his theory that Liebl had a fiduciary relationship with the LLC. However, even if a fiduciary responsibility towards the LLC and its members existed, there still was no showing of fraud, as discussed above. Thus, Wallner is not entitled to recover on this Count either.

### G. Wallner Is Not Entitled to Judgment for Embezzlement under 11 U.S.C. § 523(a)(4) (Count V)

A debt for embezzlement is excepted from discharge in bankruptcy. 11 U.S.C. § 523(a)(4). In Count V, Wallner alleges that Liebl embezzled funds, intellectual property, and trade secrets of the LLC. However, Wallner has not shown that Liebl misappropriated any property that belonged to him personally, as opposed to belonging to the LLC. He has shown no reason why he personally has a claim against Liebl for embezzlement. *See, e.g., In re Fowers*, 360 B.R. 888, 898 (Bankr. N.D. Ind. 2007) ("[B]y definition, before a creditor can make a claim of nondischargeability for embezzlement . . ., it must show that the property allegedly embezzled

. . . by the debtor was property of the creditor.") Therefore, he is not entitled to recover on this Count.

### H. Wallner Is Not Entitled to Judgment for Civil Conspiracy to Embezzle under 11 U.S.C. § 523(a)(4) (Count VII)

Count VII alleges that Hans and Kimberly Liebl conspired to embezzle from Wallner. For the same reason as discussed above, Wallner has failed to demonstrate sufficient facts to show that the Liebls conspired to embezzle from him personally. Thus, Wallner is not entitled to recovery on this Count.

## CONCLUSION

For reasons stated, Wallner will recover only on Counts VI and VIII derivatively on behalf of the LLC. A separate Judgment Order will be entered on Wallner's derivative claims against the Liebls jointly and severally on Counts VI and VIII. Recovery on the other Counts will be denied.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 27th day of July, 2010.